**UNITED MINE WORKERS INTERNATIONAL, DISTRICT 28, Plaintiff,**

v.

**HARMAN MINING CORPORATION, Defendant.**

**Civ. A. No. 91–0026–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 22, 1991.

Susan D. Oglebay, Castlewood, Va., for plaintiff.

Gregory B. Robertson, Richmond, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

United Mine Workers International, District 28 ("UMW"), brings this cause of action against Harman Mining Corporation, ("Harman") under the Workers Adjustment and Retraining Notification Act, ("WARN"). 29 U.S.C.A. §§ 2101–2109 (West 1991). The matter is presently before the court on cross-motions for summary judgment. The court has jurisdiction via 29 U.S.C.A. § 2104(a)(5).

## FINDINGS OF FACT

The material facts are not in dispute. Harman owns and operates a mining business in Buchanan County, Virginia. UMW is the exclusive bargaining agent for the classified employees at the Harman facilities involved in this action. The relevant group of Harman facilities includes two mines, known as the Greenbrier mine and the 1A mine, and a preparation plant. All the hourly employees at these three facilities are unionized and represented by the same UMW local.

As of January, 1991, 107 people (93 hourly and 14 salaried) worked in the Greenbrier mine and 39 employees (35 hourly and 4 salaried) worked in the 1A mine. Harman kept a single companywide seniority list for all employees that governed decisions concerning layoffs and bumping, a practice where, in the event of a layoff, a senior worker in one of the mines has a right to bump a less senior employee in either mine or in the preparation plant out of his job.

Prior to January, 1991, there were three areas or blocks of coal, known as sections, being mined in the Greenbrier mine. In January, 1991, Harman decided to combine its activities in the Greenbrier mine into one "supersection." This combination of mining activities required Harman to eliminate 57 positions in the Greenbrier mine, 50 of which were hourly and 7 of which were salaried. Due to cross-plant bumping rights, 36 hourly and 7 salaried workers in the Greenbrier mine were dismissed and 14 workers in the 1A mine lost their jobs. Prior to the layoff, Harman knew that fewer than 50 employees at the Greenbrier mine would be terminated. The workers did not receive sixty days notice.

## CONCLUSIONS OF LAW

The issue is whether Harman's act of dismissing a total of 43 workers in the Greenbrier mine and 14 workers in the 1A mine constituted a "plant closing" or "mass layoff" as defined in 29 U.S.C.A. § 2101, thereby entitling the workers to 60 days notice prior to termination under 29 U.S.C.A. § 2102.

The WARN act provides, "An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order." 29 U.S.C.A. § 2102. A plant closing is a "shutdown [which] results in an employment loss at the single site of employment ... for 50 or more employees." *Id.* § 2101(a)(2). A mass layoff is "a reduction in force which ... results in an employment loss at the single

site of employment ... for ... at least 33 per cent of the employees ... and at least 50 employees." *Id.* § 2101(a)(3). An employment loss is "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period." *Id.* § 2101(a)(6).

Here, Harman concedes that it is an employer as that term is defined in WARN. *Id.* § 2101(a)(1). Also, both sides agree, for purposes of this argument, that the Greenbrier mine is a single site of employment.

The threshold issue, in determining whether there has been a mass layoff or a plant closing under WARN, is whether 50 employees at a single site of employment suffered an employment loss. In determining the number of employees suffering an employment loss, UMW asserts that the court must look to the number of eliminated positions. Since 57 positions in the Greenbrier mine were eliminated, UMW asserts that this threshold requirement has been met. The plaintiff relies primarily on language in the Code of Federal Regulations which states, "In addition, for purposes of determining whether coverage thresholds are met, either incumbent workers in jobs being eliminated or, if known 60 days in advance, the actual employees who suffer an employment loss may be counted." 20 C.F.R. § 639.3(e) (1991).

On the other hand, the defendant asserts that, although 57 people lost their jobs company wide, only 43 employees from the Greenbrier mine were actually terminated. The other 14 employees bumped workers in the 1A mine. These 14 workers are not counted toward the threshold requirement because the definition of employment loss does not include employees that benefit from cross-plant bumping rights. *See id.* § 2101(a)(6). In addition to the plain language of the statute, the defendant relies on an example provided in the Federal Register which states:

It should be noted, however, that workers who suffer an employment loss at another single site of employment are not counted in determining whether plant closing or mass layoff coverage thresholds are met.... Thus, if an employer closes an operating unit which employs 55 workers and, because of crossplant bumping rights, 6 workers at another site lose their jobs ... the plant closing threshold has not been met at the first site.

54 Fed.Reg. 16,042, 16,047 (1989).

"As is appropriate in every case which turns on statutory construction, we begin with the language of the statute." *Adams v. Dole,* 927 F.2d 771, 774 (4th Cir.), *cert. denied sub nom., Adams v. Martin,* —— U.S. ——, 112 S.Ct. 122, 116 L.Ed.2d 90 (1991). "If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress." *Id.* (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). Here, the plain language of the statute requires that three elements be present in order to satisfy the threshold requirement: 1) 50 or more employees; 2) must suffer an employment loss; 3) at a single site of employment. *See* 29 U.S.C.A. § 2101(a)(2), (3). In turn, the definition of employment loss is limited to an employment termination, other than a discharge for cause, voluntary departure, or retirement, a lay off exceeding six months or a specified reduction in hours. *Id.* § 2101(a)(6). Since the definition of employment loss is limited to these three instances, it does not include workers that bump other employees under cross-plant bumping rights. *"Expressio unius est exclusio alterius* (the mention of one amounts to the exclusion of the other)." *Adams,* 927 F.2d at 776. Thus, under the express terms of the act, the 14 workers that bumped workers at the 1A mine under the cross-plant bumping rights did not suffer an "employment loss." Accordingly, they are not counted toward the threshold requirement and the WARN act is not applicable as a matter of law.

"[J]udicial inquiry into the meaning of the statute is complete once the Court finds

378

that the terms of the statute are unambiguous." *Payne v. Federal Land Bank of Columbia,* 916 F.2d 179, 182 (4th Cir.1990) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9. Therefore, in accordance with the plain language of the statute, the court grants summary judgment in favor of the defendant.

## CONCLUSION

For the foregoing reasons, the court finds that under the plain language of WARN the threshold requirement for this action has not been met. The plaintiff has not established that 50 employees suffered an employment loss at a single site of employment. Accordingly, the defendant's motion for summary judgment is hereby granted and the plaintiff's motion is hereby denied. The court will enter an appropriate order.